RECEIVED

SEP - 5 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

GLENN CHOPLIN                                    CIVIL ACTION NO. 12-1201

VERSUS                                           JUDGE DOHERTY

UNITED STATES OF AMERICA                         MAGISTRATE JUDGE HILL

## MEMORANDUM RULING

Pending before this Court is the "Motion for Partial Summary Judgment on the Issue of Liability" [Doc. 25] filed by plaintiff Glenn Choplin.  In his motion, plaintiff moves for partial summary judgment "declaring that there is no genuine issue of material fact that the Defendant, the United States of America, is solely liable for the accident that occurred on May 19, 2013 with Glenn Choplin."  The United States of America ("the government") opposes the motion [Doc. 27], and plaintiff filed a "Motion for Leave of Court to File a Memorandum in Reply" [Doc. 28], which is herein GRANTED.

I.      **Factual and Procedural Background**

The following facts are undisputed:

1.      On or about May 19, 2010, a motor vehicle accident occurred between Glenn Choplin and Brian Martin.

2.      At the time of the accident, Glenn Choplin was operating a 1998 Chevrolet Lumina with License Plate Number N1NV 803 and VIN 2G1WL52MXW9185700 in a southerly direction in the southbound lane of the 1700 block of North University in the Parish of Lafayette, State of Louisiana.

3.      Mr. Choplin turned left into the parking lot of 1726 North University.  As he entered the parking lot, his vehicle was struck by a vehicle driven by Mr. Martin.

4.      Brian H. Martin was operating a 1994 GM Mail Truck owned by the United States Postal Service, United States of America, Louisiana, License Plate Number 4313743 and VIN 1GBCS1043R2919819 (the "postal service vehicle").

5.    Prior to Mr. Choplin making his left turn, Mr. Martin had been operating and delivering mail in a postal service vehicle in a northerly direction along the shoulder of the northbound lane of the 1700 block of North University in the Parish of Lafayette, State of Louisiana.

6.    While delivering mail, Mr. Martin passed up the private driveway to the parking lot of 1726 North University and then began "backing up" the postal service vehicle in a southerly direction on the shoulder of the northbound lane of the 1700 block of North University, striking the rear of Mr. Choplin's vehicle.

7.    At the time of the accident, Mr. Martin was employed by the United States of American as a postal worker.

8.    Because of the accident, Mr. Martin was issued a ticket for improper backing.

9.    Under oath at his deposition, Mr. Martin testified the accident was his fault.

10.    Because of the accident, Mr. Choplin made a claim for damages and injury to the USPS National Tort Claim Center in compliance with the provisions of 28 U.S.C. 2672 and 2675(a) of the Federal Tort Claims Act, which was denied, thus, exhausting all of his administrative remedies.

11.    Mr. Choplin timely filed a Complaint in Federal Court against the United States Postal Service and the United States of America alleging that its employee, Brian Martin, was negligent and at fault in striking the rear driver's side of Mr. Choplin's vehicle.

Plaintiff filed the instant motion for partial summary judgment on July 13, 2013, and the issues raised therein are now ripe for review.

## II.    Law and Analysis

### A.    Jurisdictional Basis

It undisputed this Court has jurisdiction over the instant lawsuit pursuant to 28 U.S.C. §§1346(b)(1), 2671-2680, *et. seq.,* also called the Federal Tort Claims Act ("FTCA"), as the United States of America is a defendant in the captioned matter and is alleged to be liable for the torts of one of its employees.  The FTCA, 28 U.S.C. 1346(b)(1), provides:

Subject to the provisions of chapter 171 of this title, the district courts, together with

the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The FTCA subjects the United States to liability for personal injuries caused by the "negligent or wrongful act or omission of any *employee of the Government.*" The phrase "employee of the Government" includes "officers or employees of any federal agency... and persons acting on behalf of the federal agency in an official capacity..." 28 U.S.C. §2671. It is undisputed Mr. Martin was an employee of the government at the time of the subject accident.

The parties do not dispute the FTCA incorporates the law of the state where the accident occurred. Consequently, Louisiana law is applicable to the claims alleged in this matter. 28 U.S.C. §1346(b)(1).

### B.    Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or declaratory judgment is sought may, at any time, move with or without supporting affidavits for summary judgment in the parties' favor as to all or any part thereof." Fed. R. Civ. Pro. 56(b). Summary judgement is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or is otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

3

appropriate, shall be entered against the adverse party.

Fed. R. Civ. Pro. 56(e)

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618

(5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

> [. . . .]

> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Rather, the purpose of Rule 56 is to enable a party who believes there is no*

4

> *genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.*

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(emphasis added)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## C.   Analysis

In the instant motion, plaintiff alleges Mr. Martin was solely responsible for the accident that caused the plaintiff's alleged injuries. Plaintiff alleges Mr. Martin was negligent in the following particulars: (1) driving on the shoulder of the road; (2) failing to yield the right-of-way; (3) driving

at an excessive rate of speed under the circumstances; and (4) improperly backing up on the shoulder of the road.

Article 2315(A)[1] of the Louisiana Civil Code and the jurisprudential duty-risk analysis govern claims of negligence under Louisiana law.  In order for liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).  *Tyson v. King*, 29 So.3d 719, 722 (La. App. 3rd Cir. 2010), *citing Roberts v. Benoit*, 605 So.2d 1032 (La.), *on rehearing*, 605 So.2d 1050, 1051 (La.1991).

Plaintiff couches his motion in terms of *Mr. Martin's* negligence, arguing because Mr. Martin was backing up on the shoulder of the roadway in violation of La. Rev. Stat. §32:281,[2] Mr. Martin was solely liable for causing the accident and plaintiff's resulting injuries.  In support of his argument, the plaintiff cites the deposition testimony of Mr. Martin, who acknowledged

---

[1] Article 2315(A) states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. C. art. 23125(A).

[2] La. Rev. Stat. §32:281 states:

A. The driver of a vehicle shall not back the same unless such movement can be made with reasonable safety and without interfering with other traffic.

B. The driver of a vehicle shall not back the same upon any shoulder or roadway of any controlled-access highway except as a result of an emergency caused by an accident or breakdown of a motor vehicle.

La. Rev. Stat. §32:281 (West 2013).

responsibility for the accident and testified as follows:

Q:      Tell me your version of the accident. Tell me what happened.

A:      I was delivering, pulling up to a mailbox delivering the mail, and basically, I forgot to deliver a certain mailbox, passed it up.

Q:      You forgot to deliver it?

A:      Correct.

Q:      Okay.

A:      I passed it up. After passing it up 20 feet or so, I realized I needed to back up. I backed up, and in backing up I -- I looked but I didn't see Glenn turning in the driveway of Burger King and that's when I hit him.[3]

Mr. Martin went on to testify:

Q:      Okay. Now this is going to sound redundant, but I just want to make sure because I'm about to end the deposition.  There is no question in your mind that you caused the accident, correct?

A:      I was at fault.  I'd say so.

Q:      Okay.  And you can't think of anything that Mr. Choplin did that would have caused the accident?

A:      No, sir.

Q:      All right.

A:      I cannot.[4]

    In response, the government argues Mr. Martin's (a lay person's) testimony concerning his own fault is not dispositive of the issue of the government's liability in the instant case. Furthermore, the government argues courts have consistently held a motorist attempting a left-hand

---

[3] *See* Deposition of Brian Martin, attached as Exhibit A to plaintiff's motion for partial summary judgment, Doc. 25, at pp. 8, ll. 6-20 (emphasis added).

[4] *Id.* at p. 16, ll. 2-13

turn – as the plaintiff was doing in this case – is required to exercise a high degree of care and should not attempt the left turn unless he has taken every reasonable precaution to insure the turn can be made without endangering approaching motorists. *See, e.g., Casimere v. Ryder Truck Rental, Inc.,* 324 So.2d 855 (La. App. 4th Cir. 1976); *Bourque v. Haycock,* 243 So.2d 108 (La. App. 3rd Cir. 1971).

This Court has reviewed the facts of the case and the applicable jurisprudence and concludes the government's argument concerning application of a higher standard of care under the circumstances present here is not persuasive. In *Reed v. State Farm Mut. Auto Ins. Co.,* 929 So.2d 871 (La. App. 3rd Cir. 2006), the court addressed the standard of care for a left-turning motorist and, specifically, whether a left-turning motorist who gets in an accident is burdened with a presumption of negligence. In *Reed,* a motorist was attempting a left-hand turn into her driveway when her vehicle was struck by a dirt bike operated by the plaintiff. At trial, the jury was instructed that left-turning motorists involved in an accident are presumed negligent and have the burden to show they are free of negligence. *Reed,* 929 So.2d at 874. The jury then found the left-turning motorist and the plaintiff were each 50% at fault in causing the accident. *Id.*

On appeal, the left-turning motorist argued it was error for the court to burden her with a presumption of negligence *under the circumstances of the case.* The Louisiana Third Circuit agreed, reversing the judgment of the trial court and noting:

> The trial court concluded since Mrs. Jannise was executing a left-turn into her driveway, a jury instruction regarding this presumption of negligence was appropriate.
>
> [ . . . ]
>
> However, in order for the presumption of negligence to apply, the scope of the duty jurisprudentially recognized by our courts must extend to the plaintiff and the risk of injury which occurred must fall within the ambit of protection afforded under the law. ***The scope of the duty required of a left-turning motorist extends to vehicles***

8

*approaching from the opposite direction or overtaking vehicles using the lawfully designated portions of the highway for travel.  A left-turning motorist is only required to make proper observation that the left-turn can be made safely without endangering other motorists.  In this case, Mr. Reed was neither an oncoming nor an overtaking vehicle. In fact, he was not even riding on the roadway where it can be reasonably anticipated vehicles would be located. Instead, he was located off of the service road, in a recessed ditch, or on the shoulder of the road.* Moreover, the vehicle he was riding was never intended to be driven in such an area and Mr. Reed's actions placed him in a perilous position. *The scope of the duty required of a left-turning motorist extends to vehicles approaching from the opposite direction or overtaking vehicles using the lawfully designated portions of the highway for travel.  A left-turning motorist is only required to make proper observation that the left-turn can be made safely without endangering other motorists.*  The charge read to the jury by the trial court was given in error and led the jury to apply the wrong standard of care to Mrs. Jannise's actions. . . . .

929 So.2d at 875 (emphasis added) (internal citations omitted).

Similarly, in the instant case, Mr. Martin was driving neither an oncoming nor an overtaking vehicle. Indeed, Mr. Martin was not approaching from the opposite direction.  Rather, Mr. Martin was operating his vehicle on the shoulder of the road, north of the parking lot the plaintiff was attempting to enter.  Under these circumstances, as in the *Reed* case, this Court concludes the scope of the duty required of the plaintiff extended to *vehicles approaching from the opposite direction* or *overtaking vehicles using the lawfully designated portions of the highway for travel*.  Because Mr. Martin was not approaching from the opposition direction, the plaintiff in this case was not burdened with a higher standard of care in making a left turn.  Rather, as in *Reed*, this Court concludes the appropriate standard of care required of the plaintiff was that of ordinary negligence, that is, the plaintiff was only required to make proper observation that the left-turn could be made safely without endangering other motorists.

Based on the record that has been presented at this juncture, the Court cannot determine whether it was reasonable for the plaintiff to make a left-hand turn under the circumstances.  It is unclear whether the postal service vehicle had begun backing up on the shoulder at the time the

plaintiff began making his left-hand turn. Thus, it is unclear whether it was *reasonable* for the plaintiff to execute the left-hand turn in question at the time he did, or for Mr. Martin to backup as he did. Whether the plaintiff *should have seen* the postal service vehicle before he made his left-hand turn is a question of fact, and this factual question does not key necessarily or only to proximity, *i.e.*, how *close* the postal service vehicle was to the parking lot's entrance before the plaintiff began turning, as suggested by the government. Indeed, had the postal service vehicle been stationary, facing in a northbound direction, but close to the entrance to the parking lot, this Court concludes it would remain a question of fact based upon the circumstances as to whether it might have been *reasonable* for the plaintiff to begin his left-hand turn despite the proximity of the postal truck to the entrance to the parking lot, because – even if the postal service vehicle began to move – it might have been reasonable for the plaintiff to expect the postal service vehicle to move forward (in a northerly direction), and, thus, *away* from the entrance to the parking lot. One does not, necessarily, expect a vehicle on the shoulder of the road to suddenly move in reverse.

Rather, the key fact in this case is *whether both parties acted reasonably, under the circumstances, which raises the question, perhaps among other, of whether the postal truck had begun to back up down the shoulder before the plaintiff began his left turn, or what sight lines might have been at play.* If the postal truck had begun backing up on the shoulder before the plaintiff executed the left-hand turn, perhaps reasonable minds could differ as to whether it was reasonable for the plaintiff to execute a left-hand turn under those and all involved circumstances. However, there is not sufficient evidence presented as to the involved facts, particularly regarding *when* the postal truck began to back up on the shoulder of the road, and whether the plaintiff could have seen the vehicle backing up on the shoulder, because neither party asked specifically about the foregoing

at either Mr. Martin's or the plaintiff's deposition.

This Court notes Mr. Martin testified that "in backing up," he looked but "*didn't* see [the plaintiff] turning in the driveway of Burger King;"[5] didn't" is not always synonymous with "couldn't" and the answer to those same questions are also not sufficiently known from the plaintiff's perspective. All the testimony suggests is that, perhaps, the plaintiff's vehicle was not directly in a line of sight at the time Mr. Martin began backing up. The testimony does not establish whether Mr. Martin had begun backing up on the shoulder prior to the time the plaintiff began his left-hand turn and who could have seen whom. For his part, the plaintiff testified he "didn't see" the postal truck before he turned across the lanes of traffic to get into the parking lot.[6]

That Mr. Martin appears to have violated a state law prohibiting drivers from backing up on the shoulder of a roadway in a non-emergency situation is not determinative as to the inquiry before the Court, at this time. It appears undisputed that Mr. Martin was operating his vehicle illegally at the time of the accident, and indeed, Mr. Martin was ticketed for his actions in operating his vehicle. The question before this Court at this moment is whether *the plaintiff's* actions were reasonable, as a matter of law or with no relevant factual dispute. Only after knowing all of the facts surrounding the accident – and in particular, the specific facts suggested in this ruling – can this Court, or can a jury, determine whether the plaintiff could have, did, or should be deemed to have contributed in some way to the accident. Because there remain issues of fact surrounding the accident which bear on the reasonableness of the plaintiff's actions, summary judgment is inappropriate at this time.

---

[5] *See* deposition of Brian Martin, at p. 8.

[6] *See* Deposition of Glenn Choplin, attached as Exhibit B to plaintiff's motion for partial summary judgment, Doc. 25, at p. 35, ll. 21-24.

11

**III.    Conclusion**

Considering the foregoing, IT IS ORDERED that the Motion for Partial Summary Judgment on the Issue of Liability" [Doc. 25] filed by plaintiff Glenn Choplin is DENIED at this time.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___5___ day of September, 2013.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE